UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
UNITED STATES OF AMERICA      :
                              :
         v.                   :      No. 2:07-CR-34-1
                              :
JEFFREY M. EVANS              :
         Defendant            :
```

**MEMORANDUM OPINION AND ORDER**

Jeffrey M. Evans is charged with manufacturing marijuana, conspiracy to manufacture marijuana and money laundering.  Before the Court is Evans's Motion to Suppress Evidence and to Dismiss the criminal proceeding.  For the reasons set forth below, the motion is DENIED.

## Factual Background

On March 19, 2007, United States Magistrate Judge Jerome Niedermeier issued search warrants to search the residences and vehicles of Daisy Morrisson and Jeffrey Evans at 422 South Pond Road and 382 North Road in Eden, Vermont.  On March 20, 2007, the Drug Enforcement Agency ("DEA") executed the search warrants and found extensive evidence of marijuana cultivation operations at each location.

DEA Task Force Agent Todd McCabe submitted an affidavit in support of the search warrant that revealed the following information.  In August 2006 a confidential source ("CS") told Agent McCabe and DEA Special Agent Rick Carter that "Jeff a/k/a

'Raver' and his girlfriend Daisy have three houses for growing marijuana in Eden, Vermont." (McCabe Aff. 2 ¶ 5.) The CS had told Agent Carter in a previous meeting that "Raver" owned two houses in Eden where he grew marijuana and that his parents helped him purchase the homes which he then paid off with proceeds from the sale of marijuana. At both meetings the CS said that "Raver" lived in one of the homes with his girlfriend Daisy.

Agent McCabe described the CS as having provided "very accurate" information concerning certain individuals' drug distribution activities. (*Id.* ¶ 4.) He stated that the CS had previously given statements against the CS's interest and provided information about other criminal associates. According to McCabe, Agent Carter had been able to corroborate "much" of the information that the CS had provided. (*Id.*) The CS had also worked under the direction and control of DEA agents after the interview to obtain evidence against one or more uncharged defendants.

From the cell phone logs of two individuals charged with marijuana cultivation, the DEA obtained a telephone number for "Raver." The number was the same as a phone number in the name of D. Morrison for both addresses.

2

An examination of Department of Motor Vehicle records and telephone and postal records for Morrisson and Evans confirmed that Morrison listed 382 North Road as her residence and Evans listed 422 South Pond Road as his residence.  An investigation of the land records revealed that the owners of the South Pond Road Property were Donald and Mary Lou Evans of Cooperstown, New York, where Evans had previously lived.  McCabe also confirmed that Morrisson owned the North Road Property.  Although Morrisson received her mail at the North Road Property, Agent McCabe made numerous trips to the property and did not see any vehicles entering or exiting the driveway from his position on the public highway.

When Agent McCabe investigated electrical accounts held in the names of Evans or Morrisson, he found a pattern of extremely high electrical use.  The accounts at the South Pond Road property had an average monthly usage almost three times as high as that of the previous owner.  A representative from the Vermont Electric Cooperative, the company that supplied power to both residences, stated that the consumption of power at both locations was "unusually high" when compared with the average consumption of a Vermont home.  (*Id.* at 7 ¶ 21.)

On December 6, 2007, Evans moved for and was granted an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978).  At the hearing, Agent McCabe testified that he understood the CS's knowledge of Evans and Morrisson to be based on something the CS had heard.  He believed that the CS had never actually seen the cultivation operations or spoken with Evans and Morrisson about them.  (Suppression Hr'g Tr. vol. 2, 14, Jan. 10, 2008.)  He testified that this understanding was based on the context of the interview and a conversation he had with Agent Carter afterwards.  (Hr'g Tr. 15.)  McCabe could not remember when the conversation with Carter took place but believed it occurred prior to submitting the application for a search warrant.  At the time that McCabe submitted the affidavit, he believed that the CS had no personal knowledge of Evans and Morrisson.  (*Id.*)

Agent Carter also testified at the hearing.  His testimony provided additional details of the two meetings held with the CS.  According to Agent Carter, Evans and Morrisson were discussed at two separate meetings with the CS.  At the first meeting the CS mentioned Evans and Morrisson as part of a lengthy session where the CS revealed over thirty names.  The purpose of the second meeting was to establish the CS as a DEA confidential informant.

Agent Carter asked the CS to repeat the information regarding Evans and Morrisson for Agent McCabe.  According to Carter, the CS discussed Evans and Morrisson for one to two minutes at each meeting.  Carter did not inquire into the CS's basis of knowledge because Evans and Morrisson were not the focus of either meeting.

Agents McCabe and Carter's accounts regarding the length and purpose of the meetings with the CS were similar.  However, Agent Carter differed with Agent McCabe concerning the CS's basis of knowledge.  According to Carter he never spoke with McCabe regarding the CS's basis of knowledge prior to submitting the affidavit.  Carter only asked the CS about the CS's basis of knowledge after the search warrant was executed.  At this point, the CS told him that the CS knew Evans and Morrisson and had heard about the cultivation operations from mutual friends but had never been inside their houses.

## **Discussion**

Evans has moved to suppress the evidence obtained against him on the grounds that the affidavit submitted in support of the warrant application did not establish probable cause under the totality of the circumstances.  *See Illinois v. Gates*, 462 U.S. 213 (1983).  He argues further that Agent McCabe recklessly omitted information concerning the CS's reliability and basis of

knowledge that constituted a *Franks* violation.  *See Franks v. Delaware*, 438 U.S. 154 (1978).  Finally, Evans argues that the "good faith" exception articulated in *United States v. Leon*, 468 U.S. 897 (1984), does not apply here because the issuing magistrate was recklessly misled and the search warrant was so lacking in indicia of probable cause that it was objectively unreasonable for the police officers to rely upon it.

## I.  Probable Cause

The Fourth Amendment prohibits unlawful searches and seizures and requires that search warrants be issued only when there is probable cause.  U.S. Const. amend IV.  In order to determine probable cause, an issuing magistrate must assess whether, based on the totality of circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular location.  *Gates*, 462 U.S. at 238.

Probable cause is a "fluid concept" and requires a fact-specific inquiry in every case.  *Id.* at 232.  An affidavit must present enough information to allow the issuing magistrate to independently conclude that probable cause exists rather than merely to ratify the conclusions of others.  *Id.* at 239.

In reviewing a search warrant, substantial deference should be paid to the issuing magistrate's determination of probable

cause. *United States v. Jackstadt*, 617 F.2d 12, 13 (2d Cir. 1980) (per curiam).  In order to encourage the use of warrants, reviewing courts should read the affidavit in support of the warrant in a common-sense and realistic fashion. *See United States v. Ventresca*, 380 U.S. 102, 108 (1965).  Close cases should be resolved by upholding the warrant. *Jackstadt*, 617 F.2d at 14.  As long as the magistrate had a substantial basis for concluding that probable cause existed, a search warrant should be upheld. *Gates*, 462 U.S. at 236-37.

In *Gates*, the United States Supreme Court disavowed the two-pronged *Aguilar-Spinelli* test requiring separate and independent substantiation of an informant's veracity or reliability and the informant's basis of knowledge. *See id.* at 230.  Although the requirements of the *Aguilar-Spinelli* test remain "highly relevant in determining the value of [an informant's] report," they are simply "closely intertwined issues" that may assist in the "commonsense" determination of whether there is probable cause to believe that evidence of a crime is to be found in a particular location. *Id.*  In considering the overall reliability of a tip, a deficiency in one element may be compensated by a strong showing in another element under the totality of the circumstances analysis. *Id.* at 233.  Absence of information

regarding an informant's basis of knowledge does not of itself negate the existence of probable cause to issue a search warrant. *See United States v. Peyko*, 717 F.2d 741, 743 (2d Cir. 1984) (per curiam).

Thus, when an affidavit depends on information obtained from a confidential informant, a court may consider whether the police were able to corroborate the information. *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004). A court may also consider the professional assessment of a law-enforcement officer as to the probable significance of the facts set forth in the affidavit based on his or her experience and expertise. *See United States v. Young*, 745 F.2d 733, 758 (2d Cir. 1984).

The affidavit in support of the search warrant established probable cause. The police corroboration of the information revealed by the CS provided Magistrate Judge Niedermeier with enough information to make an independent finding of probable cause.

Although Agent McCabe did not include information as to the CS's basis of knowledge, he did address the CS's reliability. The CS's credibility was bolstered by the fact that the CS had provided reliable information in the past. *See United States v. Schaefer*, 87 F.3d 562, 566 (1st Cir. 1996). The CS had also

8

given statements against interest and against other suspects.  In addition, the CS provided the information in two face-to-face encounters, making it more likely that the information was reliable.  *See Gagnon,* 373 F.3d at 236 (confidential informant who provides information in a face-to-face encounter may be considered more reliable than an anonymous tipster).

Agent McCabe also corroborated the CS's statements through independent law enforcement investigation into land, DMV, telephone and electrical records.  This investigation found the following:  Evans and Morrisson lived together in one house while the other appeared unoccupied; one house was owned by a couple who bore Evans' last name while the other was owned by Morrisson; and the electric use in both houses was unusually high.  The telephone number linking the name "Raver" to a phone number belonging to D. Morrisson further helped to establish that "Raver" and Evans are the same person.

The affidavit was also bolstered by McCabe's explanation of the significance of high electrical power consumption.  In the affidavit he states that based on his training and experience he knows that indoor marijuana growers often use high intensity metal halide or high pressure sodium lights which along with other cultivation equipment consume large amounts of electricity.

9

McCabe's assessment along with the evidence of high electrical use helped provide a basis for concluding there was probable cause.  *Young*, 745 F.2d at 758.

In addition, an informant who is right about some things is more likely to be right about others.  *Gates*, 462 U.S. at 244. Agent McCabe was able to corroborate much of the information provided by the CS which lends credence to the rest of the CS's allegations.

Based on the totality of circumstances set forth in the affidavit, Magistrate Judge Niedermeier had a substantial basis for concluding that there was a fair probability that a search would uncover evidence of a crime.

## II.  Franks Violation

Evans asserts that the magistrate judge was misled by the affidavit's failure to make clear that the CS had no personal knowledge of Evans and Morrisson.  Under *Franks*, a defendant who has made a preliminary showing that an affiant acted deliberately or with reckless disregard for the truth in preparing an affidavit may request a hearing to determine whether the search warrant must be voided and the fruits of the search excluded. 438 U.S. at 155-56.  Omissions of material information are

handled in the same way. *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985).

Once a defendant has been granted a *Franks* hearing, he must show by a preponderance that the falsehoods or omissions were made deliberately or with reckless disregard for the truth, and were necessary to the determination of probable cause. *Id.*; *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). Under certain circumstances recklessness may be inferred from omissions, but the omission must be "clearly critical" to the finding of probable cause. *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).

If a court determines that law enforcement deliberately or recklessly omitted material information, it must then determine whether the remainder of the warrant affidavit establishes probable cause. *United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005).

At the *Franks* hearing Agent McCabe testified that while he knew the CS had no direct link to Evans and Morrisson, he did not believe it was necessary to include that information, as he likened the situation to that of an anonymous tipster where the information must be strongly corroborated by independent police work. He believed that he did not need to include information

11

about the CS's basis of knowledge because he had sufficiently
corroborated the information provided by the CS.

Regardless of whether Agent McCabe could be characterized as
having acted deliberately or recklessly in omitting the
information that the CS lacked personal knowledge of Evans and
Morrisson, this detail was not necessary to the finding of
probable cause.  Had the affidavit expressly stated that the CS
did not have personal knowledge of Evans and Morrisson's
activities, it would still include enough additional information
to establish probable cause.  *See Canfield*, 212 F.3d at 718
("ultimate inquiry is whether, after putting aside erroneous
information and material omissions, 'there remains a residue of
independent and lawful information sufficient to support probable
cause.'") (quoting *Ferguson*, 758 F.2d at 848).  The past
reliability of the CS along with the corroboration provided by
the land, telephone and electrical records established probable
cause under the totality of the circumstances analysis, as
discussed above.

**III.  The Good Faith Exception**

Under *United States v. Leon*, evidence is admissible in a
criminal trial when law enforcement officers acting in
objectively reasonable good faith rely on the validity of a

12

defective warrant.  468 U.S. at 920-21.  The good faith exception
has limits however, and in certain circumstances an officer will
not have reason to believe that the warrant was properly issued.
*Id.* at 922-23.  Suppression of evidence is appropriate when (1)
the issuing magistrate was misled by information that the affiant
knew or should have known was false except for a reckless
disregard for the truth; (2) the magistrate abandoned a neutral
judicial role; (3) the search warrant is so lacking in indicia of
probable cause as to make it unreasonable to rely on it; or (4)
the warrant is so facially deficient that it is unreasonable for
the executing agent to rely on it.  *Id*. at 923.  Evans argues
that the good faith exception does not apply under the first and
third exceptions:  because the issuing magistrate was misled, and
because reliance upon the affidavit was objectively unreasonable.

    As discussed above, any omissions from the affidavit were
not material and therefore did not mislead the magistrate judge.
*See Canfield*, 212 F.3d at 721.  In addition, it was objectively
reasonable for the police to rely on the warrant.  Even in cases
where courts have ruled that law enforcement did not sufficiently
corroborate information gleaned from a confidential informant or
anonymous source, they have found that the affidavit contained
enough information for an objectively reasonable officer to rely

13

on it.  *See, e.g., United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) ("bare-bones" affidavit lacking in probable cause to link residence with methamphetamine operation would not result in suppression because officer's reliance on warrant was objectively reasonable); *United States v. Clark*, 31 F.3d 831, 835-36 (9th Cir. 1994) (although anonymous tip and high electricity usage were insufficient to establish probable cause to suspect a marijuana growing operation, officers' reliance on search warrant was objectively reasonable).

The DEA undertook a thorough investigation to identify "Raver" and Daisy, to identify where they lived, that they were linked with other indoor marijuana cultivators, and that they had unusually high electricity bills.  Even had the Court determined that the warrant affidavit did not supply probable cause, the officers' reliance upon the Magistrate Judge's determination in issuing the warrant was objectively reasonable.

## Conclusion

For the foregoing reasons, Evans's motion to suppress and to dismiss is DENIED.

Dated at Burlington, in the District of Vermont, this 23rd day of April, 2008.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge
U.S. District Court